O'Neill et al., Appellants, *v.* Zoning Board of
Adjustment.

332

Argued May 1, 1969. Before BELL, C.J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Edward L. Snitzer,* with him *Mesirov, Gelman, Jaffe & Levin,* for appellants.

*Matthew W. Bullock, Jr.,* Second Deputy City Solicitor, with him *Frank J. Pfizenmayer,* Assistant City Solicitor, *Carl K. Zucker,* Deputy City Solicitor, and

*Edward G. Bauer, Jr.,* City Solicitor, for zoning board, appellee.

*Reuben E. Cohen,* with him *Harold Greenberg,* and *Cohen, Shapiro, Berger, Polisher and Cohen,* for intervenor, appellee.

OPINION BY MR. JUSTICE JONES, May 28, 1969:

This is an appeal from an order of the Court of Common Pleas of Philadelphia County dismissing appellants' appeal from an order of the Philadelphia Zoning Board of Adjustment granting a variance to appellee Norman Wolgin for the construction of a high-rise apartment in center city Philadelphia.

Wolgin entered into an agreement of sale for the premises located on the northeast corner of 17th and Pine Streets upon the condition that he secure the necessary zoning approval for the erection of a twenty-six story apartment on the site. The property is located in a "C-3" commercial district which permits the construction of apartment buildings but limits the allowable floor space to 84,646 square feet and requires an open area of 20%. Wolgin's apartment building calls for 225,809 square feet of floor space and an open area of only 5%. The site is presently being used as a public parking lot.

The area was originally zoned "C-3" in 1933 and was occupied by a school until its demolition in 1953. In 1958 permission was granted for the construction of the parking lot. Wolgin's principal argument for a variance is that if his apartment building is limited to 84,646 square feet (ten to twelve floors), the costs of acquisition and construction will require him to charge a monthly rent of $320 per unit, whereas he would only have to charge $220 per unit if he were permitted to construct a twenty-six floor apartment.

Wolgin appealed to the Zoning Board of Adjustment after the Department of Licenses and Inspections refused to grant a building permit. Although the Philadelphia Planning Commission opposed the granting of a variance, the Zoning Board unanimously granted the variance. The Court of Common Pleas (per ALEXANDER, J.) dismissed, without an opinion, the appeal of appellants, who are neighboring homeowners.

In considering the merits of this appeal, we bear in mind the following principles which govern the disposition of variance cases: first, since the court below took no additional testimony, our scope of review is limited to determining whether the Zoning Board of Adjustment clearly abused its discretion in granting the variance or committed an error of law;[1] second, variances should be granted only sparingly and only under exceptional circumstances;[2] third, in order to obtain a variance, the petitioner must prove (1) that the variance will not be contrary to the public interest and (2) that unnecessary hardship will result if the variance is not granted;[3] fourth, a variance will not be granted solely because the petitioner will suffer an economic hardship if he does not receive one.[4] Especially is a variance not to be granted when

---

[1] *Polizzi v. Zoning Board of Adjustment*, 420 Pa. 405, 407, 218 A. 2d 226 (1966); *McClure Appeal*, 415 Pa. 285, 287, 203 A. 2d 534 (1964); *Di Santo v. Zoning Board of Adjustment*, 410 Pa. 331, 334, 335, 189 A. 2d 135 (1963).

[2] *McClure Appeal*, 415 Pa. 285, 287, 203 A. 2d 534 (1964); *Crafton Borough Appeal*, 409 Pa. 82, 87, 185 A. 2d 533 (1962); *Pincus v. Power*, 376 Pa. 175, 180, 101 A. 2d 914 (1954).

[3] *Peirce v. Zoning Board of Adjustment*, 410 Pa. 262, 265, 189 A. 2d 138 (1963); *Di Santo v. Zoning Board of Adjustment*, 410 Pa. 331, 334, 189 A. 2d 135 (1963); *Upper St. Clair Twp. Grange Zoning Case*, 397 Pa. 67, 152 A. 2d 768 (1959).

[4] *Andress v. Zoning Board of Adjustment*, 410 Pa. 77, 88, 188 A. 2d 709 (1963); *Di Santo v. Zoning Board of Adjustment*, 410 Pa.

the petitioner purchased the property with the knowledge of the existing zoning regulation or when he should have been aware of the zoning regulation.[5]

The crux of Wolgin's argument for a variance was presented by his architect who testified as follows: "Q. And you have taken into account the cost involved? A. Yes.. Q. Based upon the gross floor area permit under C-3 regulations, was this result attainable? A. The result was not attainable because of result in the rent per apartment and because of the additional cost of land per apartment and additional construction cost and operating cost. Q. Your rent target, what will it be averaging? A. The developer's program called for $220 per month. Q. And the development according to C-3 means less the number of square feet for the gross floor area would increase the rent per month to what? A. The developer feels that it will mean a rent raise of $100."

It is not disputed on the face of the record that Wolgin cannot profitably build and operate *an apartment building* of less than twenty-six floors on this site. As indicated above, however, a variance will not be granted solely because the petitioner will suffer an economic hardship unless he receives one. Wolgin failed to prove two necessary elements in his case: first, he failed to prove that the property cannot continue to be utilized profitably in its present state as a public parking lot; second, Wolgin failed to prove that, even if a parking lot is no longer desirable, the property could not

331, 334, 189 A. 2d 135 (1963) ; *Crafton Borough Appeal*, 409 Pa. 82, 87, 88, 185 A. 2d 533 (1962) ; *Mangrann v. Zoning Board of Adjustment*, 404 Pa. 198, 201, 170 A. 2d 553 (1961).

[5] *McClure Appeal*, 415 Pa. 285, 288, 291, 203 A. 2d 534 (1964) ; *Di Santo v. Zoning Board of Adjustment*, 410 Pa. 331, 336, 189 A. 2d 135 (1963) ; *Crafton Borough Appeal*, 409 Pa. 82, 89, 185 A. 2d 533 (1962) ; *Upper St. Clair Twp. Grange Zoning Case*, 397 Pa. 67, 71, 72, 152 A. 2d 768 (1959).

profitably be used for some purpose which comports with the zoning requirements.

In its conclusions of law the Zoning Board found: "3. That the subject property cannot be practically or feasibly developed within the regulations of the 'C-3' classification so as to provide a reasonable return on investment. that must [sic] 4. That the refusal of a variance will compel the property owner to hold the premises undeveloped as a parking lot, a far less desirable and productive use than the one proposed in the present application." We conclude after studying the record that there is no evidence to substantiate these conclusions and that, as a result, the Zoning Board abused its discretion in granting the variance.

Wolgin argues that "our courts have repeatedly held that where a property cannot be used realistically and feasibly within the existing zoning classification, a variance is justified," citing *Andress v. Zoning Board of Adjustment*, 410 Pa. 77, 188 A. 2d 709 (1963) ; *Ferry v. Kownacki*, 396 Pa. 283, 152 A. 2d 456 (1959) ; *Garbev Zoning Case*, 385 Pa. 328, 122 A. 2d 682 (1956). In all three of these cases, however, there was a definite finding that the property could not be used profitably for any purpose permitted under the applicable zoning regulation. Mr. Justice CURTIS BOK, speaking for a unanimous Court in *Kownacki*, explained the distinction between these three cases and the present situation in these words: "The effect of the zoning ordinance and the development of the area is to destroy the value of these peoples' land altogether, or at least to the distress level where buying sharks can always be found: that is not real value. It is not a case like Pincus v. Power, 376 Pa. 175, 101 A. 2d 914 (1954), where there was basic value but the siren voice of progress made a variance seem a luscious thing to have. Here there is not only no value above a 'distinct sacrifice' that is a 'ridiculous' figure, but there is no market

at all." (396 Pa. at 287)[6] Wolgin has presented no evidence that the property cannot be profitably used in some fashion which does not violate the zoning ordinance. The fact that one particular project may not be financially feasible under the ordinance is not determinative.

Wolgin and the City of Philadelphia in its brief on behalf of the Zoning Board argue that a twenty-six floor apartment building would benefit this area of center city. While this contention may well be justified, this is not the type of decision which the Zoning Board of Adjustment is authorized to make.[7] Instead, it is the task of that branch of the Philadelphia government responsible for zoning to rezone the property if it finds that larger buildings should be erected in the area. Although it may well be true that the present zoning regulations are "old and outmoded . . . in light of presently existing conditions . . ." nevertheless this problem cannot and should not be remedied piecemeal by the grant of variances.

Finally, Wolgin argues that different standards should apply when the petitioner is seeking a variance from open area and space requirements instead of from a prohibited use. Wolgin rightfully points out that his intended use of the property is permitted under the existing zoning regulations. Suffice it to say, however, that in our case law we have made no such distinction. While we might be willing to concede that in a given case the quantum of proof required to prove an unnecessary hardship might be less where the petitioner

---

[6] See also: *Peirce v. Zoning Board of Adjustment,* 410 Pa. 262, 266, 189 A. 2d 138 (1963) ; *Di Santo v. Zoning Board of Adjustment,* 410 Pa. 331, 336, 189 A. 2d 135 (1963) ; *Poster Advertising Co. v. Zoning Board of Adjustment,* 408 Pa. 248, 251, 252, 182 A. 2d 521 (1962).

[7] We note in passing again, however, that the City Planning Commission opposed the grant of a variance in this case.

is seeking a variance from space requirements than from use requirements, nevertheless this is not such a case. First, Wolgin has not presented evidence that the property cannot be profitably used within the present space requirements. Second, Wolgin's apartment building would be more than a mere technical and superficial deviation from the space requirements. The building would contain approximately two and one-half times as much floor space as is now permitted under the zoning regulation. In such a situation, petitioner's remedy would appear to be a rezoning and not a variance.

Order reversed.

Mr. Justice COHEN dissents.